# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CANDACE MCCULLLOUGH and JEREMY BOWLIN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 6:22-CV-03029-MDH<br>) |
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, et al., | )<br>)<br>) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. 18) the above-captioned case. Defendants filed a response to the Motion (Doc. 23), but Plaintiffs filed no reply. The matter is now ripe for review. For the reasons set forth herein, the Motion is **DENIED**.

## BACKGROUND

Each of the Defendants is associated with Diamond Resorts ("Diamond"). Diamond Resorts U.S. Collection Members Association ("DRUSC") provides timeshare interests in the form of points, a form of currency to be redeemed for varied accommodations, travel and other benefits. DRUSC is the contracting party with Diamond timeshare purchasers of the "U.S. Collection" (or the "Collection"), an array of timeshare resort properties located across the United States to which members have access. The Suites at Fall Creek Condominium Association, Inc. ("Fall Creek COA"), the defendant that Defendants argue is fraudulently joined, is the condominium association at one such resort in Branson, Missouri ("the Resort").

Plaintiffs are Kansas residents. (Pet. at ¶ 1). They have made three purchases with DRUSC. On June 18, 2019, while at a Diamond resort in Las Vegas, Nevada, Plaintiffs purchased 7,500

1

points for use in the Collection at a purchase price of $32,343.00 (the "2019 PSA"). (*See* Doc. 23 Ex. B; Pet. at ¶ 11). At the time, they acknowledged they were purchasing points. (Doc. 23 Ex. C at 1).

Less than two months later, on August 7, 2019, while at the Resort in Branson, Missouri, Plaintiffs made a purchase of what is known as a "Sampler" package, purchasing 20,000 points that expire within 24 months from the date of purchase for $3,995.00, financed over two years (the "Sampler Agreement"). (*See* Doc. 23 Ex. D; Pet. at ¶ 19, Ex. 1). The "Sampler" permits a purchaser to enjoy certain identified facilities in the "U.S. Collection" for a limited period of time. *See id*.

On March 10, 2020, Plaintiffs entered into another Purchase and Security Agreement with DRUSC (the "2020 PSA"). (*See* Doc. 23 Ex. E; Pet., Ex. 3). In a transaction that was conducted by phone and mail, with no connection to Missouri, the Plaintiffs agreed to purchase more of what they first purchased in the 2019 PSA, specifically 4,000 additional points at a purchase price of $16,213.00. (*See id.*; Doc. 7-1 at ¶ 8). Again, they acknowledged that what they were purchasing were points for use in the U.S. Collection. (Doc. 23 Ex. F at 1).

The governing documents for the Collection provide that members of the Collection are assessed annual maintenance charges used to operate, maintain, and refurbish each resort in the Collection. In other words, they do not receive statements from each of the associations for the constituent resorts. Maintenance statements that were mailed to the Plaintiffs were all from or on behalf of Diamond Resorts U.S. Collection Members Association ("Collection Members Association") and all stated that payment was to be made to Collection Members Association.

**STANDARD**

Defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). A plaintiff

may challenge removal by filing a motion to remand. *See* 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing subject-matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). "[A] district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted).

## DISCUSSION

Plaintiffs' argument that this case should be remanded is two-fold. Plaintiffs assert that this Court does not have subject matter jurisdiction pursuant to 28 U.S.C. s. 1441(b)(2), because (1) the amount in controversy at the time of removal is less than $75,000, and (2) the lawsuit names a Missouri Citizen as a defendant which violates the "forum defendant" rule. Defendants in turn argue that the amount in controversy exceeds $75,000 if attorney fees are considered, and Defendants further contend that Fall Creek COA is a fraudulently joined party.

1. **The amount in controversy exceeds $75,000**

"When the two parties to an action are citizens of different states … a federal district court's jurisdiction extends to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.'" *Kopp v. Kopp,* 280 F.3d 883, 884 (8th Cir. 2002). In determining if the amount in controversy requirement is met, courts look to the amount in controversy at the time of removal. *Cary v. All State Insurance Company,* No. 4:19 CV 17 RWS, 2019 WL 414718 at *1 (E.D. Mo. Feb. 1, 2019).

Plaintiffs' claimed damages claims are actual damages of $29,293.37, punitive damages for $15,000, and for statutory attorney's fees under Count I for violations of MMPA, or Count III for violations of the Missouri Usury statute. This Court has found that, "[w]hile the Eighth Circuit has not yet addressed the issue, the majority of district courts within this circuit have held that

3

attorney fees incurred post-removal are includable in the amount in controversy calculation so long as they are reasonable." *Stanley v. Lafayette Life Ins. Co.*, No. 3:13-CV-05137-MDH, 2015 WL 2062568, *3 (W.D. Mo. May 4, 2015) (collecting cases). Thus, "the true amount in controversy at the commencement of the action" properly includes "a reasonable estimate of future attorney fees…" *Stanley*, 2015 WL 2062568 at *4-5. Defendants' Notice of Removal states that "it is more than reasonable to conclude as a conservative assessment that this case will require at least $50,000 in attorneys' fees that must be included in the amount in controversy." (Doc. 1).

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). Plaintiffs do not show to a legal certainty that reasonable attorneys' fees cannot reach the $50,000 amount Defendants posit or even the $30,706.73 that Plaintiffs concede would suffice to satisfy the $75,000 threshold if actual damages and punitive damages are limited to $29,293.57 and $15,000, respectively. The Court finds that the amount in controversy in this case is met for purposes of establishing subject matter jurisdiction.

**2. Fall Creek COA is a fraudulently joined party**

Defendants argue that the diversity of citizenship requirement is met because named Defendant Fall Creek COA is fraudulently joined. 28 U.S.C. § 1441(b)(2) prohibits removal of a civil action "if any of the parties in interest property joined and served as defendants is a citizen of the State in which such action is brought." Plaintiffs name Defendant Fall Creek COA, which is a Missouri citizen.

Defendants contend that Fall Creek COA's joinder is fraudulent and should be disregarded. "Joinder is fraudulent where state law precludes or otherwise does not support a cause of action against the defendant." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014). Thus, "[a] defendant alleging fraudulent joinder must prove that the plaintiff's claim against the diversity-destroying defendant has no reasonable basis in fact and law." *Halsey v. Townsend Corp. of Indiana*, 20 F.4th 1222, 1226 (8th Cir. 2021) (internal quotation omitted).

In their Motion, Plaintiffs' main argument is that Fall Creek COA supposedly "is a necessary party to the action as a beneficiary of the sales agreement and the progenitor of assessments for maintenance and operation of the Resort…As the timeshares marketed by Defendants include its Branson Resort, the maintenance fees assessed to Plaintiffs were necessarily promulgated by Defendant Association." (Doc. 19) Thus, Plaintiffs continue, because they allege Fall Creek COA "issued assessments, and that Plaintiffs' [sic] paid assessments to [it]," "[i]n accomplishing rescission . . . necessarily Defendant Association would be a party as it has received payment from the transaction at issue…" *Id.*

Being a necessary party for purposes of Federal Rule of Civil Procedure 19 is insufficient to render a defendant properly joined: "before a party will be joined…as a defendant the plaintiff must have a cause of action against it." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989). "[W]hile Rule 19 provides for joinder of necessary parties, it does not create a cause of action against them." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 366 (D.C. Cir. 1999). Thus, "[i]t is not enough that plaintiffs 'need' [the equitable relief of rescission] against [Fall Creek COA] in order to obtain full relief," (*id.*), which is what Plaintiffs argue in their Motion. "They must also have a right to such [relief], and Rule 19 cannot provide such a right." *Davenport*, 166 F.3d at 366. To avoid a finding of fraudulent joinder,

5

Plaintiffs were required to show that their allegations "support a cause of action against" Fall Creek COA. *Wivell*, 773 F.3d at 893.

However, there is no indication that Plaintiffs were ever assessed maintenance fees by Fall Creek COA or paid it any maintenance fees. Plaintiffs purchased a timeshare interest or 'Membership' in the Diamond Resorts U.S. Collection, which made them members of the Diamond Resorts U.S. Collection Members Association. The Sampler Agreement also specifies that Plaintiffs purchased "Sample Point" that can only be used for accommodations at participating Sampler destinations. Plaintiffs used points to reserve accommodations at resorts, once of which was the Defendant Fall Creek COA's resort.

Plaintiffs' allegations that they were assessed fees by Fall Creek COA are contradicted by Plaintiffs' submissions to the Court. The 2020 PSA expressly states that the $705.00 amount is the "Initial Use Year's Association standard Assessments (estimated)," and that "You will be billed for Assessments separately *by the Association*." (Pet., Ex. 3 at 1) (emphasis added). On the same page, the Agreement defines the term "Association" as "Diamond Resorts U.S. Collection Members Association . . . ." *Id.* Moreover, Section 3 of the PSA states, "You must pay Assessments (also known as 'Maintenance Fees') annually *to the Association for as long as You own your Membership*." *Id.* at § 2 (emphasis added). It further provides in Article 11 that the maintenance fees are determined and assessed by the Association, upon each of the Members of the Association (such as Plaintiffs), for the upkeep and operation of all resorts in the Collection. The maintenance assessment, that is, the "Standard Assessment," is part of the "Collection Costs" that are levied Collection-wide *by the Association* – not Fall Creek COA or any other "Component Site Owners Association" – upon all Members. At no point is Fall Creek COA mentioned or referred to.

6

As shown in the statements sent to the Plaintiffs during their time as members of the Collection, starting in 2019, the statements are sent on behalf of the Association and inform the recipient to "Make Check Payable to: Diamond Resorts U.S. Collection Members Association." (Second Harris Decl., Exs. 2-4, 7 at 1). On the opposite side, in the answer to the question, "What are assessment fees and who determines them?," the reader is told that two types of assessments are levied by the Collection Members Association to cover the expenses of "each resort in the Collection," and they include expenses budget by "the associations of each resort in the Collection." *Id*. 2.

Accordingly, the purported joinder of Fall Creek COA as a defendant by Plaintiffs does not satisfy Rule 19. Plaintiffs rely on the allegations that they were assessed fees and paid feeds to Fall Creek COA to assert that Fall Creek COA is a necessary party to this action. However, Plaintiffs' allegations do not demonstrate that Plaintiffs have any cause of action against Fall Creek COA. Therefore, the Court finds that Fall Creek COA was fraudulently joined in this case. The party's Missouri citizenship can therefore be disregarded for purposes of the "forum defendant" rule. The Court concludes that the parties meet the diversity requirement.

## CONCLUSION

As discussed above, the Court finds that the diversity of citizenship and amount in controversy requirements needed to establish subject matter jurisdiction pursuant to 28 U.S.C. s. 1332 are satisfied in the above-captioned case. Accordingly, Plaintiffs' Motion to Remand (Doc. 18) is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 19, 2022  <u>*/s/ Douglas Harpool*</u>
**DOUGLAS HARPOOL**
**United States District Judge**