IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CANDACE MCCULLLOUGH and JEREMY BOWLIN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 6:22-CV-03029-MDH ) |
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Diamond Resorts U.S. Collection Development, LLC's ("DRUSC"), Diamond Resorts Fall Creek Development LLC's, Diamond Resorts International Club, Inc.'s, and The Suites at Fall Creek Condominium Association, Inc.'s (collectively, "Defendants") Motion to Compel Arbitration and Dismiss Plaintiffs' Petition. (Doc. 6). For the reasons set forth herein, the Motion is **GRANTED**. The above-captioned case is hereby dismissed without prejudice.

## BACKGROUND

Plaintiffs bring claims for (1) violation of the Missouri Merchandising Practices Act, Mo. Stat. § 407.010 *et seq.* ("MMPA"); (2) fraudulent misrepresentation; (3) usury; (4) unjust enrichment; and (5) invalid arbitration clause. Plaintiffs' claims still stem from two timeshare interest purchases (in June 2019 and March 2020) in Defendant Diamond Resorts U.S. Collection Development, LLC's ("DRUSC") "U.S. Collection" of timeshare resorts and one sampler membership purchase in August 2019 (the "Sampler"), all with DRUSC, and all governed by written agreements. Plaintiffs seek, among other things, to "rescind all agreements between

1

Plaintiffs and Defendants for the purchase of the timeshare interests and all related and attendant obligations among the parties…" Pet. at 14-15.

Each of the Defendants is associated with Diamond Resorts ("Diamond"). Diamond Resorts U.S. Collection Members Association ("DRUSC") provides timeshare interests in the form of points, a form of currency to be redeemed for varied accommodations, travel and other benefits. DRUSC is the contracting party with Diamond timeshare purchasers of the "U.S. Collection" (or the "Collection"), an array of timeshare resort properties located across the United States to which members have access. The Suites at Fall Creek Condominium Association, Inc., ("Fall Creek COA") is the condominium association at one such resort in Branson, Missouri ("the Resort").

Plaintiffs are Kansas residents. Pet. at ¶ 1. They have made three purchases with DRUSC. On June 18, 2019, while at a Diamond resort in Las Vegas, Nevada, Plaintiffs purchased 7,500 points for use in the Collection at a purchase price of $32,343.00 (the "2019 PSA"). (*See* Doc. 23 Ex. B; Pet. at ¶ 11). At the time, they acknowledged they were purchasing points. (Doc. 23 Ex. C at 1).

Less than two months later, on August 7, 2019, while at the Resort in Branson, Missouri, Plaintiffs made a purchase of what is known as a "Sampler" package, purchasing 20,000 points that expire within 24 months from the date of purchase for $3,995.00, financed over two years (the "Sampler Agreement"). (*See* Doc. 23 Ex. D; Pet. at ¶ 19, Ex. 1). The "Sampler" permits a purchaser to enjoy certain identified facilities in the "U.S. Collection" for a limited period of time. *See id*.

On March 10, 2020, Plaintiffs entered into another Purchase and Security Agreement with DRUSC (the "2020 PSA"). (*See* Doc. 23 Ex. E; Pet., Ex. 3). In a transaction that was conducted by phone and mail, with no connection to Missouri, the Plaintiffs agreed to purchase more of what

2

they first purchased in the 2019 PSA, specifically 4,000 additional points at a purchase price of $16,213.00. (*See id.*; Doc. 7-1 at ¶ 8). Again, they acknowledged that what they were purchasing were points for use in the U.S. Collection. (Doc. 23 Ex. F at 1).

### The Arbitration Provisions

Both the 2019 and 2020 PSAs contained identical arbitration agreements. These arbitration agreements appear in both PSAs under the heading of "ARBITRATION PROVISION." *See* Ex. A at § 16; Ex. D at § 16 (collectively, the "Arbitration Provisions"). Pursuant to the Arbitration Provisions, the Parties agreed that "any Claim between You and Diamond, whether preexisting, present, or future, arising from or relating to this Agreement [the PSAs] or the Collection shall, at the election of either party, be arbitrated on an individual basis…" Exs. A & D at § 16.1.

The term "Claim" is defined in broad terms:

> "Claim" shall be broadly construed and includes, without limitation, disputes concerning: purchase, financing, ownership or occupancy; breach, termination, cancellation or default; condition of any Collection Accommodation; The Club or other exchange programs; reservations, points or rewards programs; applications and personal information; marketing or sales solicitations, representations, advertisements, promotions or disclosures; and collection of delinquent amounts and the manner of collection. "Claim" also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, Uniform Commercial Code, regulation, ordinance, common law and equity.

With regard to the scope of the Arbitration Provisions, they provide that, "[s]olely for purposes of this Provision, 'Diamond' also means Diamond's parent companies, subsidiaries and affiliates; the employees, officers and directors of Diamond and its parent companies, subsidiaries and affiliates; and any other person or entity named as a defendant or respondent in a Claim by You against Diamond." *Id.* at § 16.1 (emphases added). Furthermore, "[a]ll administrative and arbitrator fees exceeding $250" in an individual arbitration are to be paid by "Diamond," (*id.*), meaning that the Arbitration Provisions cap Plaintiffs' payment for arbitration fees at $250. In

3

Case 6:22-cv-03029-MDH   Document 27   Filed 05/26/22   Page 3 of 7

each of the Arbitration Provisions, the parties agreed that the scope of the arbitration agreement would be decided by a court, and not an arbitrator, "provided that disputes about the validity or enforceability of this Agreement as a whole are for the arbitrator to decide…" *Id.* at § 16.2. The Arbitration Provisions also provided Plaintiffs the right to reject or opt out of the agreement to arbitrate if written notice was given within thirty days of the signing of the PSAs. *Id*. at § 16.5. Plaintiffs never attempted to opt out of the Arbitration Provisions.

### STANDARD

The Arbitration Provisions at issue specifically call for the application of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The FAA creates a body of federal substantive law applicable in both state and federal courts that governs arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). Congress enacted the FAA "in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). In enacting the FAA, Congress "declare[d] a national policy favoring arbitration," (*Preston v. Ferrer*, 552 U.S. 346, 349 (2008)), and required courts to "rigorously" enforce arbitration agreements. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

The FAA provides that if a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. A court must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," because a "prime objective" of arbitration "is to achieve streamlined proceedings and expeditious results." *Preston*, 552 U.S. at 357-58 (internal quotation omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring

arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

## DISCUSSION

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute. Instead, "the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694–95 (8th Cir. 1994). Indeed, "[a] federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement." *Id.* Because federal policy generally favors arbitration, courts should resolve any doubts regarding issues of arbitrability in favor of arbitration. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999) (internal citations omitted).

**1. The Arbitration Provisions constitute a valid agreement to arbitrate**

The first issue is whether a valid agreement to arbitrate exists. *Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (internal citations omitted). "Whether an arbitration agreement is valid is a matter of state contract law." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (internal citation omitted). Both the 2019 PSA and the 2020 PSA provide that they are "governed by Nevada law without regard to Nevada's choice of law rules." Exs. A & D at § 17. Nevada law therefore applies.

Nevada law provides that for an enforceable contract to exist, there must be an offer and acceptance, meeting of the minds, and consideration. *See May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Here, these elements have been met. DRUSC made its offer containing the Arbitration Provisions when it presented the 2019 PSA and 2020 PSA to Plaintiffs, and they

5

accepted them when they signed and delivered the contracts. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 283 P.3d 250, 255 (Nev. 2012). There is no question that the Arbitration Provisions agreed to by Plaintiffs establish the essential terms of an arbitration agreement. *See* Exs. A & D at § 16. As for consideration, "the parties' mutual agreement to arbitration" is "sufficient consideration" under Nevada law for an arbitration agreement. *Thrash v. Towbin Motor Cars*, No. 2:13-CV-01216-MMD, 2013 WL 6210632, *2 (D. Nev. Nov. 26, 2013). Thus, all elements of contract formation are established.

Plaintiffs contend that they "enter[ed] the agreement containing the arbitration provision Defendants seek to enforce" – the 2020 PSA – as a result of fraud, and thus because "the arbitration term, as part of the sales agreement, is subject to the fraud claims asserted by the Plaintiffs, the Court may void, in whole or in part, the arbitration provision for fraud." (Doc. 22). However, it is established law that Plaintiffs are not correct. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–04 (1967), the Supreme Court held that a claim of fraud in the inducement of a contract as a whole," as opposed to only the agreement to arbitrate, "must go to an arbitrator…" *Barker*, 154 F.3d at 791 (affirming dismissal on ground that arbitration was required).

Plaintiffs also argue that the arbitration is unenforceable because the provision is allegedly unconscionable. After reviewing applicable law, the Court concludes that there is no basis for finding Arbitration Provisions substantively or procedurally unconscionable. *See, e.g., AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 346-47 (2011); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *Thrash v. Towbin Motor Cars*, No. 2:13-CV-01216-MMD, 2013 WL 6210632, *2 (D. Nev. Nov. 26, 2013).

6

### 2. Plaintiffs' claims fall within the scope of the Arbitration Provisions

Here, it is clear that the Arbitration Provisions cover the disputes at issue. The Arbitration Provisions provide that "[a]ny Claim between You and Diamond, whether preexisting, present or future, arising from or relating to this Agreement or the Collection shall, at the election of either party, be arbitrated on an individual basis…" Exs. A & D at § 16.1. The term "'Claim' shall be broadly construed and includes, without limitation, disputes concerning: purchase, financing, ownership or occupancy; breach, termination, cancellation or default; marketing or sales solicitations, representations, advertisements, promotions or disclosures," among other things. *Id.* § 16.2. Plaintiffs' claims arise from or relate to the 2019 PSA, the 2020 PSA, and the U.S. Collection. Plaintiffs' claims clearly fall within the scope of the Arbitration Provisions.

### CONCLUSION

Based on the foregoing, the Motion to Compel Arbitration and Dismiss Plaintiffs' Petition is (Doc. 6) **GRANTED**. Plaintiffs are **ORDERED** to arbitrate their claims that are subject against all Defendants. The above-captioned case is hereby dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: May 26, 2022                                         */s/ Douglas Harpool*
                                                                            **DOUGLAS HARPOOL**
                                                                            **United States District Judge**